J-S32010-22
J-S32011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LANCE GREEN | : | |
| | : | |
| Appellant | : | No. 1337 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 14, 2021
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0001989-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LANCE GREEN | : | |
| | : | |
| Appellant | : | No. 1338 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 14, 2021
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0002049-2011

BEFORE: PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY PANELLA, P.J.: **FILED JANUARY 06, 2023**

Lance Green appeals from the judgments of sentence[1] imposed
following the revocation of his probation. On appeal, we must determine

---

[1] Because these appeals have a substantially similar procedural history and
raise the same legal question, we consolidate them *sua sponte* and will
consider them together.

whether Green was denied his right to a speedy revocation of probation hearing pursuant to Pa.R.Crim.P. 708. We conclude that Green was not afforded a speedy revocation of probation hearing and was prejudiced as a result. Accordingly, we vacate the judgments of sentence.

In March 2012, Green entered a guilty plea to one count of possession with intent to deliver a controlled substance at trial court docket No. 1989-2011 ("PWID conviction"). The trial court imposed a sentence of 27 to 60 months in prison, followed by two years' special probation. At trial court docket No. 2049-2011, Green entered a guilty plea to one count of criminal use of a communication facility ("CUCF conviction"). The trial court sentenced Green to 18 to 36 months in prison, followed by two years' special probation, to be served consecutive to the sentence imposed for the PWID conviction. This Court affirmed Green's judgments of sentence. *See Commonwealth v. Green*, 105 A.3d 36, 1353 MDA 2012 (Pa. Super. filed June 18, 2014) (unpublished memorandum).

In August 2014, Green filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act ("PCRA")[2] challenging the effectiveness of trial counsel's representation. The PCRA court granted Green's petition in part, vacating the sentence imposed for the CUCF conviction and resentencing

---

[2] *See* 42 Pa.C.S.A. §§ 9541-9546.

Green to 3 years' special probation, to be served consecutive to his sentence for the PWID conviction.

The ensuing procedural history is tortuous and, at times, contradictory. Similarly, the certified record before us is not a model of clarity. On March 21, 2016, Green was released on parole for the PWID conviction. The maximum sentence date for the PWID conviction was July 21, 2016, and Green's probationary term was to start immediately upon his completion of parole. **See** Order to Release on Parole, 3/15/16. Green violated his parole in June 2016 by failing to report. The Pennsylvania Board of Probation and Parole ("the Board") declared Green delinquent and notified the Lackawanna County Probation Department ("the Department"). From the record, it is unclear whether the Board issued a warrant for the parole violation.

County Probation Officer Al Munley testified that, after receiving notice from the Board that Green had absconded, the Department issued a *capias* and bench warrant in July 2016. **See** N.T., 2/1/21, at 7. However, no *capias* or bench warrant appears in the trial court dockets in July 2016. When asked about this discrepancy, PO Munley represented that he had a copy of a 2016 bench warrant in his own case file, and it included the judge's signature. **See**

*id.* at 12-13.[3] PO Munley vaguely attributed the lack of filing to a mistake in the Clerk of Courts office. *See id.* at 13.

Green remained at large. Then, in October 2016, Green was apprehended in Snyder County. PO Munley stated,

> And I believe [Green] was picked up in Snyder County, I believe, he was at the Snyder County Prison in October of 2016. Due to a technical error, he was inadvertently released from there when the Parole Board took it upon themselves to get a lift order because they believed that the 60[-]month parole term had expired. Which it had, however, there was also our bench warrant had indicated that there was -- he was under supervision with our jurisdiction for the 5[-]year [s]pecial [p]robation portion of the sentence.

*Id.* at 7-8; *see id.* at 16 (wherein PO Munley testified that officials in Snyder County contacted the Board's parole agent). PO Munley maintains the Snyder County Prison should have contacted the Department instead. *See id.* at 8.[4]

In February 2018, Green was arrested by the United States Marshals Service for unrelated federal firearms offenses. Green was held in the

---

[3] PO Munley's copy of the purported July 2016 warrant is not included in the certified record.

[4] We observe that the record is somewhat ambiguous as to whether Green was apprehended in Snyder County based on a parole warrant or a probation warrant. Though the record does not reflect the filing of a bench warrant by the Board, the trial court's opinion states that Green was apprehended on a Board retainer. *See* Trial Court Opinion, 3/21/22, at 4. By contrast, PO Munley's testimony suggests that he believed Green was apprehended based on a bench warrant issued by the Department. *See* N.T., 2/1/21, at 14 ("I believe he was picked up on it [the 2016 warrant]."), 16 (stating that the Department initially issued the bench warrant).

Lackawanna County Prison from February 2018 to June 2020.[5] The Department was unaware of Green's incarceration at that time. *See id.* at 9.

PO Munley testified that in July 2020, he received a "random phone call" from a Pennsylvania State Police trooper who indicated that Green had arrived at Snyder County Prison to retrieve personal property. *See id.* "And the trooper had thought that maybe [Green] should have still been under supervision, so he reached out to us." *Id.* According to PO Munley, he asked the trooper to direct Green to report to the Department. *See id.* Green did not report. *See id.*

On July 27, 2020, the Department issued a *capias* for Green's arrest, alleging that Green violated the probation condition requiring him to "comply with Municipal, State and Federal criminal laws, as well as the provisions of the Vehicle, Liquor and Welfare codes." Capias, 7/27/20; *see also* N.T., 2/1/21, at 10. The *capias* was docketed only under the CUCF conviction. Our review of this document reveals that the docket number was correctly identified for the CUCF conviction, No. 2049-2011, but the second trial court docket number was misidentified as No. 1189-2011. The *capias* was re-issued on August 7, 2020.

---

[5] Green was released from prison in June 2020 after the federal firearms charges were withdrawn. The charges were later refiled, but Green was released on his own recognizance. *See* Trial Court Opinion, 3/21/22, at 5.

The Department issued a bench warrant against Green for violation of his probation. **See** Bench Warrant, 8/6/20; **see also** N.T., 2/1/21, at 10. The bench warrant is docketed only at the PWID conviction, and the warrant itself solely identifies the PWID conviction. Green was apprehended shortly thereafter.[6, 7]

Subsequently, on September 24, 2020, the Department filed a petition charging Green with violations of his probation, alleging that Green violated the conditions requiring him to comply with criminal laws and to report to his probation officer. **See** Violation Petition, 9/24/20. The violation petition is docketed only at the CUCF conviction, and again, misidentifies the second docket as No. 1189-2011. **See id. But see** N.T., 2/1/21, at 10-11 (wherein PO Munley testified that he intended to file the violation petition at both trial court dockets).[8]

_____

[6] While Green was being processed for intake at the Lackawanna County Prison, corrections officers recovered marijuana, cocaine, and heroin on Green's person. As a result, Green was charged with several drug offenses at trial court docket No. 1639-2020. Green's appeal relating to these drug offenses is docketed in this Court at 1339 MDA 2021.

[7] In its opinion, the trial court states that it held a **Gagnon I** hearing on August 31, 2020. **See Gagnon v. Scarpelli**, 411 U.S. 778 (1973). Neither docket contains an indication that Green was notified of this hearing or a notation that the hearing took place. However, Green does not contest this, except to note that the **Gagnon I** hearing notice only identified No. the PWID conviction.

[8] We observe that the *capias*, bench warrant, and violation petition were absent from the certified record. Despite the fact that it was Green's duty to provide this Court with a complete record, our Prothonotary made efforts to

*(Footnote Continued Next Page)*

The trial court conducted a hearing on February 1, 2021. The transcripts from the hearing, titled Omnibus Hearing, identifies the probation revocation docket numbers, as well as No. 1639-2020.[9] At the start of the hearing, the assistant district attorney stated the parties were to discuss the omnibus pretrial motions Green had filed at No. 1639-2020. *See* N.T., 2/1/21, at 3. However, we observe that the arguments Green advanced in his motion to suppress in No. 1639-2020 are based on the arguments he presents herein. Further, the trial court addressed Green's pretrial motion and found him in violation of his probation in the same order. *See* Order, 6/8/21.

On September 14, 2021, the trial court revoked Green's probation at both underlying trial court dockets. Under the CUCF conviction, the trial court sentenced Green to 18 to 36 months in prison, followed by 2 years' probation. Additionally, under the PWID conviction, the trial court sentenced Green to a consecutive term of 2 years' probation. The trial court directed both revocation sentences to be served consecutive to the new sentence imposed at No. 1639-2020.

_____

locate the missing materials. *See Commonwealth v. Bongiorno*, 905 A.2d 998, 1001 (Pa. Super. 2006) (stating that "the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts."). Following our Prothonotary's inquiry, the trial court supplemented the record and amended the dockets.

[9] The hearing transcripts were also not made part of the original certified record. The trial court supplemented the record based on our Prothonotary's inquiry.

Green filed an untimely "*nunc pro tunc*" post-sentence motion listing all three docket numbers. Green did not seek permission to file a *nunc pro tunc* post-sentence motion, nor did the trial court expressly grant reconsideration. Notwithstanding, Green filed timely notices of appeal from the court's imposition of his revocation sentences.

In both appeals, Green claims the trial court failed to conduct a speedy revocation hearing, in violation of Pa.R.Crim.P. 708. Green points to the fact that the Department did not file the violation petition until approximately 4 years after the violations occurred, and approximately 2 years after his supervision expired pursuant to his PWID conviction.[10]

Our review of a judgment of sentence imposed following a probation revocation is limited to the validity of the proceedings, the legality of the sentence, and the discretionary aspects of the sentence. **See Commonwealth v. Wright**, 116 A.3d 133, 136 (Pa. Super. 2015).

Green's claim requires us to consider the timeliness of his revocation hearing. The pertinent part of Rule 708, governing hearings for violations of probation, provides as follows:

**Rule 708. Violation of Probation, Intermediate Punishment, or Parole: Hearing and Disposition**

* * *

---

[10] In his appellate brief for the appeal from the revocation under his PWID conviction, Green also raises a due process claim arising from the delayed revocation hearing. Based on our disposition of the Rule 708 claims, we need not reach this issue.

(B) Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment, or parole as allowed by law unless there has been:

(1) a hearing held as speedily as possible at which the defendant is present and represented by counsel; and

(2) a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.

Pa.R.Crim.P. 708(B).

The language "speedily as possible" has been interpreted to require a hearing within a reasonable time. Rule 708 does not establish a presumptive period in which the Commonwealth must revoke probation; but instead, the question is whether the delay was reasonable under the circumstances of the specific case and whether the appellant was prejudiced by the delay. …

In evaluating the reasonableness of a delay, the court examines three factors: the length of the delay; the reasons for the delay; and the prejudice resulting from the delay. The court must analyze the circumstances surrounding the delay to determine if the Commonwealth acted with diligence in scheduling the revocation hearing. Prejudice in this context compromises the loss of essential witnesses or evidence, the absence of which would obfuscate the determination of whether probation was violated, or unnecessary restraint of personal liberty.

***Commonwealth v. Woods***, 965 A.2d 1225, 1227-28 (Pa. Super. 2009) (citation omitted).

Even in cases where, as here, the revocation proceedings take place after the natural expiration of the probationary period,[11] a defendant may be

_____

[11] We note that if Green had been found delinquent on his parole and probation sentences after a reasonably speedy hearing, he would have received no credit
*(Footnote Continued Next Page)*

- 9 -

sentenced "if the revocation is based on a violation which occurred within the probationary period." ***Wright***, 116 A.3d at 137. Nevertheless, "the probation must be revoked and the sentence must be imposed within a reasonable time after the expiration of the probationary period." ***Id.***

Instantly, Green entered guilty pleas for the underlying cases in March 2012. On March 21, 2016, Green was released on parole for the PWID conviction, with a maximum parole sentence date of July 21, 2016. The probationary terms were to start immediately upon completion of parole. Therefore, the probation term imposed for the PWID conviction expired in July 2018. ***See*** N.T., 2/1/21, at 16-17.

Because Green absconded from parole supervision and failed to report at the start of his probationary term, the failure to report violation occurred in July 2016. PO Munley was aware that Green had absconded from parole in June 2016 and was immediately aware that Green did not report for the start of probation. ***See Commonwealth v. Stancil***, 524 A.2d 505, 506-07 (Pa. Super. 1987) (explaining that "revocation hearings must be held with reasonable promptness after a probation officer is chargeable with knowing that probation has been violated").

---

for the time he was delinquent. ***See Commonwealth v. Ortega***, 995 A.2d 879, 885 (Pa. Super. 2010), *disapproved of on other grounds*, ***Commonwealth v. Foster***, 214 A.3d 1240, 1251 (Pa. 2019). However, in the absence of a court finding of a violation rendered after a reasonably speedy hearing, there are only allegations of delinquency. We cannot accept the Commonwealth's allegations as fact in the absence of such a hearing.

Green was apprehended and arrested on August 17, 2020, and the Department filed the violation of probation petition the following day. The trial court held a violation of probation hearing on February 1, 2021. Accordingly, the trial court conducted the revocation hearing more than 4 years after the initial violation and more than 2 years after Green's probationary term at No. 1989-2011 had expired. We conclude that such a lengthy delay is not intrinsically reasonable. *See Commonwealth v. Christmas*, 995 A.2d 1259, 1263 (Pa. Super. 2010) (reviewing cases and noting that "[t]his Court has previously held delays of fifteen months, two years, and four years are not 'intrinsically reasonable.'" (citations omitted)).

We must next consider the reasons for the delay. "When examining the reasons for the delay, the court looks at the circumstances surrounding the delay to determine whether the Commonwealth acted with due diligence in scheduling the revocation hearing." *Christmas*, 995 A.2d at 1263. The Commonwealth attributes the delay to Green's "inadvertent" release from Snyder County Prison without notice to the Department, Green's failure to report after a state trooper in Snyder County contacted the Department, and Green's incarceration due to federal charges. The trial court accepted the Commonwealth's explanation. *See* Trial Court Opinion, 3/2/22, at 11.

However, upon review, we conclude the Commonwealth did not sufficiently establish that the lengthy delay in holding the revocation hearing was reasonable. Through the testimony of PO Munley, the Commonwealth

- 11 -

essentially shifts blame, in part, to Snyder County Prison officials for failing to notify the Department of Green's whereabouts. However, the Commonwealth ignores the fact that the difficulty in locating Green when he was first held in Snyder County was largely an issue of their own creation. As we explained above, neither a *capias* nor a bench warrant was filed in 2016, and the relevant dockets reflect multiple breakdowns in filing necessary documents throughout the course of this matter. Without a bench warrant present on the dockets or in the certified record, we cannot agree that Snyder County Prison bore the responsibility of notifying the Department.

Additionally, the Commonwealth states it was unaware that Green was incarcerated in the Lackawanna County Prison, less than 2 miles away from the Department office, for approximately two-and-a-half years for federal firearms charges. The Commonwealth makes no assertion that PO Munley actively attempted to locate Green during that time period. Indeed, the Department did not issue another bench warrant until August 2020. Finally, we note that in July 2020, Green in fact was in the presence of a state trooper and the Department did not have Green arrested, presumably due to the lack of an official warrant on the file for the trooper to rely upon.

Under these circumstances, we find that the Commonwealth did not act with due diligence in scheduling the revocation hearing. ***See Stancil***, 524 A.2d at 507 (evaluating a speedy revocation hearing claim under then-Rule 1409 where appellant's probation was revoked for failing to report and failing to

make restitution, and concluding that the Commonwealth offered no explanation for the delay beyond appellant's incarceration during a portion of the relevant time); *see also Christmas*, 995 A.2d at 1263 ("[W]here the Commonwealth provides no explanation for the delay, the court should not attribute the delay to the defendant; instead, the court should analyze whether the delay prejudiced the defendant."); *Woods*, 965 A.2d at 1228 (proceeding to prejudice prong where a 9-month delay was not explained).

Finally, we consider whether Green was prejudiced by the delay. "There is no *per se* rule of prejudice for technical violations of the Rules of Criminal Procedure." *Christmas*, 995 A.2d at 1263. Generally, our Court has interpreted prejudice as "something which would detract from the probative value and reliability of the facts considered, vitiating the reliability of the outcome itself." *Id.* (citation omitted). Prejudice may also result from the loss of witnesses or evidence as a result of the delay. *See id.*; *Woods*, 965 at 1228. However, this Court has also held that "in cases where probation revocation hearings are not held until after the expiration of the probationary term, a certain amount of prejudice necessarily follows from the fact of the expiration of that probation." *Stancil*, 524 A.2d at 507.

We find that Green was presumptively prejudiced by this protracted delay, where his probationary term pursuant to the PWID conviction expired in July 2018, approximately two years before he was arrested on the only valid bench warrant issued in this case, and nearly two-and-a-half years before the

revocation hearing. **See Wright**, 116 A.3d at 139 (concluding that appellant was presumptively prejudiced by a delay of 4 years following the probation violation, and the hearing occurred two-and-a-half years after her probation ended). We acknowledge that Green's probationary term for the CUCF conviction did not expire prior to the revocation hearing; however, the alleged violation was based Green's failure to report in 2016. Moreover, we conclude that prejudice resulted from the delay because at the time of the revocation hearing, the trial court was also able to consider the federal charges filed in 2018. **See** Order, 6/8/21 (referring to the federal offenses in support of its reasons for finding Green in violation of probation). Had the initial bench warrant been properly filed in 2016, Green ostensibly could have been apprehended before he was detained on the federal charges. **See Wright**, 116 A.2d at 139 (finding prejudice where a 4-year delay in conducting the revocation hearing affected the trial court's revocation sentence because it considered subsequent convictions).

In sum, we conclude that the delay of more than four years following the violation for failure to report was unreasonable and not solely attributable to Green. Additionally, Green was prejudiced both because his probationary term for the PWID conviction had expired more than two years prior to the revocation hearing, and because the delay permitted the trial court to consider additional violations. Therefore, Green's right to a speedy revocation hearing

under Rule 708 was violated, and we must vacate the judgments of sentence imposed following the revocation of his probation.

Judgments of sentence vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2023